**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose Antonio MERCADO,
Defendant–Appellant.**

**Docket No. 01–4238.**

United States Court of Appeals,
Tenth Circuit.

Oct. 4, 2002.

Stephen R. McCaughey, Salt Lake City, UT, for Defendant–Appellant.

Wayne T. Dance, Assistant United States Attorney (Paul M. Warner, United States Attorney, with him on the brief), District of Utah, Salt Lake City, UT, for Plaintiff–Appellee.

Before HARTZ, McKAY, and O'BRIEN, Circuit Judges.

McKAY, Circuit Judge.

The issue in this appeal is whether the automobile exception applies to searches of temporarily immobile vehicles. At 11:00 p.m. on July 20, 2000, Appellant, Mr. Mercado, had his malfunctioning minivan towed to a twenty-four-hour tow shop. He inquired about having it towed an additional 320 miles to Denver, Colorado. When Appellant arrived at the tow shop, a highway patrolman, Officer Bushnell, happened to be in the shop in civilian clothes waiting for the owner. Appellant was unaware that he was a police officer. As Appellant discussed towing his vehicle with the tow shop owner, the officer overheard the conversation and became suspicious that Appellant was engaged in illegal activity.

Appellant inquired about the cost of towing. After being quoted a price of $750, he left the office three different times (presumably to make phone calls). Appellant indicated that he could not pay at that time, but he insisted that his brother could pay the cost when the van arrived in Denver. The tow shop owner said he needed cash or a credit card up front. The officer asked why Appellant was in such a hurry, and Appellant answered that he had to get back to work. The officer followed up this question "at length," but Appellant "wasn't able to tell ... who he worked for or where." Rec., Vol. II, at 21. At that point, the tow company owner explained that he was not going to tow the van that night regardless of whether he had the money up front. The owner indicated that he would rather look at the van to see if he could fix it for less than it would cost to tow it, and the Appellant agreed.

Appellant and the tow shop owner proceeded to look at the minivan. The officer followed and noted that when the tow shop owner asked Appellant to open the hood, Appellant "unlocked the door, opened the door. He got in and closed the door. And then he unlatched the hood, got back out, locked the door and shut it." Rec., Vol. II, at 22. At another point in the inspection, Appellant left the door slightly ajar, and the officer approached the van to see how Appellant would react. Appellant "quickly jumped in front of [the officer] and slammed the door shut." Id. at 25. The tow company owner determined that the van only had minor problems and probably just needed "an alternator and a belt" that would only cost "a couple hundred dollars versus $750." Id. at 27–29. Appellant then agreed to let the tow company fix the van and offered to bring the keys to the shop in the morning, but the owner responded that he would have the van fixed "by the time you get back tomorrow." Id. at 28. Appellant then left the keys to the van and went to find a motel for the night. Id.

The officer testified that Appellant's actions, as a whole, led him to believe he had probable cause to search the van. They included Appellant's failure to tell the officer where he worked, his initial willingness to have his van towed a long distance before even inquiring into the cost of having it fixed, Appellant's persistence in keeping the van doors locked, and his hesitation in leaving his keys with the tow shop owner.

Shortly after Appellant left for the night, the officer observed through the window of the van that the ceiling had been altered to create a three or four-inch space between the ceiling and the shell. Believing he had probable cause to search the van, the officer convinced the tow shop owner to give him the keys to the van so he could investigate further. As soon as he entered the van, the officer smelled marijuana. He proceeded to search the altered ceiling space where he found bundles which appeared to be drug contraband. Officer Bushnell then called local police officers who found Appellant at a motel and arrested him.

In all, the officer found eighty-six packages of marijuana and three packages of methamphetamine hidden in the van. The officer did not obtain a search warrant before he entered the van, though he testified that he did know how to obtain a telephonic search warrant and was aware that there had been a justice of the peace in the area in the past. *Id.* at 49. Appellant pled guilty to possession of a controlled substance with intent to distribute, pursuant to 21 U.S.C. § 841(a)(1). He reserved his right to appeal the denial of his motion to suppress evidence used to convict him.

## I. Automobile Exception

■ On appeal, the Government relies on the automobile exception to the search warrant requirement to justify the officer's search of Appellant's van. "When federal officers have probable cause to believe that an automobile contains contraband, the Fourth Amendment does not require them to obtain a warrant prior to searching the car for and seizing the contraband." *Florida v. White,* 526 U.S. 559, 563–64, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999). The rationale for the automobile exception is based on both the inherent mobility of cars (as it is often impracticable to obtain a warrant before a car can be driven away) and the fact that there is a reduced expectation of privacy with motor vehicles. *See California v. Carney,* 471 U.S. 386, 390–93, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); *see also Carroll v. United States,* 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

The threshold issue we must address is whether the automobile exception applies to an inoperable car. The Supreme Court has repeatedly stated that if an automobile is "readily mobile and probable cause exists to believe it contains contraband," a further showing of exigent circumstances is unnecessary. *Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996).

In *Michigan v. Thomas,* 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982), the Supreme Court implied that the mobility of a car is not always relevant. In *Thomas,* police stopped the defendant for a traffic violation and found that the 14–year–old driver had an open bottle of alcohol in the car. Prior to having the car towed, pursuant to state law, the officer searched the car and found drugs and a shotgun. The Court stated that "the justification to conduct ... a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered

with, during the period required for the police to obtain a warrant." *Id.; see also United States v. Ludwig,* 10 F.3d 1523, 1528 (10th Cir.1993) (automobile exception applied to a car parked in a motel parking lot after a drug dog alert gave rise to probable cause); *see also United States v. Sparks,* 291 F.3d 683, 690 (10th Cir.2002) (automobile exception applied to defendant's truck after he had been arrested for possession of a controlled substance). However, we do acknowledge that the search in *Thomas* occurred after police had rightfully impounded the vehicle and that the car was, in fact, mobile at the outset of the encounter with the police. *Thomas,* 458 U.S. at 260, 102 S.Ct. 3079.

■ The present case presents a unique circumstance because the car was not immobile as the result of a justifiable police stop but simply because it was having mechanical problems. Regardless, Appellant's car had not lost its *inherent* mobility. Additionally, the repair shop was open all night and the mechanic had indicated that the van would be operable again before morning. The shop was open to the public, including to the Appellant, all night. We are of the view that mere temporary immobility due to a readily repairable problem while at an open public repair shop does not remove the vehicle from the category of "readily mobile." *Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996).

Appellant relies on *Lavicky v. Burnett,* which is inapposite. 758 F.2d 468 (10th Cir.1985). In *Lavicky,* we determined that the automobile exception did not apply to a pickup truck that had been seized from the defendant's driveway by police pursuant to a larceny conviction. Because the vehicle was on private property, not a public way, with the motor partially disassembled, we held that the automobile did not satisfy the ready mobility standard. *Id.* at 475. But, unlike the present case, the automobile in *Lavicky* had no prospect of being made mobile in a matter of hours. In viewing the continuum between *Lavicky* and the automobile exception's lesser expectation of privacy in vehicles, we believe that the minivan in the present case is not similar enough to the partially disassembled car on private property in *Lavicky.* To the extent that *Lavicky* appears to expound upon the automobile exception to general search warrant requirements, the language it employs is of questionable merit after *California v. Carney* and *United States v. Ludwig.* Construing *Carney,* we said, "[t]he question is only whether the 'vehicle was so situated that an objective observer would conclude that it was being used not as a residence, but as a vehicle.'" *Ludwig,* 10 F.3d at 1529 (quoting *Carney,* 471 U.S. at 393, 105 S.Ct. 2066).

We are further persuaded by the reasoning of two recent decisions, one by this circuit and one by the Eighth Circuit, even though the cases are not published and therefore not precedential. In *United States v. Salazar,* we recently noted that "courts have not focused on factual controversies regarding the degree to which a vehicle is or is not readily mobile, or whether its mobility has been or could be obstructed by the police." No. 01–3046, 2002 U.S.App. LEXIS 4223, at *8, 38 Fed. Appx. 490, 2002 WL 393848 (10th Cir. Mar. 14, 2002) (unpublished disposition). In *United States v. Maggard,* the Eighth Circuit upheld the application of the automobile exception to a truck stuck in a ditch. No. 00–1146, 200 U.S.App. LEXIS 11756, 2000 WL 680394 (8th Cir.2000) (unpublished disposition). That court reasoned that the truck had not lost its "inherent mobility." *Id.* at *3. There was "no evidence of permanent immobility" because the truck could become mobile by simply towing it out of the ditch. Therefore, the automobile exception applied. *Id.*

We are not persuaded by Appellant's argument that he had a heightened expectation of privacy in his van when he left it at a shop open to the public twenty-four hours a day. *See United States v. Ludwig*, 10 F.3d 1523, 1526 (10th Cir.1993) (where a vehicle occupies a parking space in a hotel parking lot, a hotel guest has no legitimate expectation of privacy in the area around the vehicle where a dog sniff provided probable cause). Even under the stricter standard of a residential search, where there is an implied higher expectation of privacy, this circuit recently determined that a man, though living in an auto repair shop garage, did not have a reasonable expectation of privacy in regard to his personal belongings while the garage was open for business. *United States v. Easterling*, No. 01–6187, 2002 U.S.App. LEXIS 7100, at *5, 41 Fed.Appx. 201, 2002 WL 568189 (10th Cir. April 17, 2002) (unpublished disposition). Since the automobile exception contemplates a lesser expectation of privacy, Appellant's claim that he had a higher expectation of privacy in his minivan is not persuasive.

## II. Probable Cause

While Appellant did not have a higher expectation of privacy in his minivan, a warrantless search of an automobile is permitted only if "there is probable cause to believe that the vehicle contains contraband or other evidence which is subject to seizure under law." *Ludwig*, 10 F.3d at 1528 (quoting *United States v. Ross*, 456 U.S. 798, 809, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)). The Supreme Court has stated that "[a]rticulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible" because "[t]hey are commonsense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695, 116 S.Ct. 1657,

134 L.Ed.2d 911 (1996) (quotations omitted). In determining whether probable cause exists, an officer "may draw inferences based on his own experience." *Id.* at 700.

■ At the time of the officer's observations, the minivan was at the repair shop. The officer was at liberty to look in the windows of the van and make observations. Appellant did not have any heightened right to privacy in the area around the van because the van was not located on Appellant's private property. Appellant does not argue against the assertion that the officer's observation of the altered ceiling, if coupled with legitimately suspicious activity, would give rise to probable cause. It is well established that evidence of a hidden compartment can contribute to probable cause to search. *See United States v. Anderson*, 114 F.3d 1059, 1066 (10th Cir.1997) (probable cause when driver and passenger gave "slightly conflicting" versions of travel plans, and officer detected scent of air freshener in car and observed evidence that gas tank had been tampered with).

Appellant contends that the officer's observations however, singularly or in concert, did not give rise to probable cause. We explore each observation while keeping in mind the instruction from the Supreme Court that "an appeals court should give due weight to a trial court's finding that the officer was credible and the inference was reasonable." *Ornelas*, 517 U.S. at 700, 116 S.Ct. 1657.

The trial court found that Appellant's inability to articulate where or for whom he worked was suspicious and contributed to the finding of probable cause. Rec., Vol I, at 37. The Government argues that Appellant's vague response was similar to giving an officer unusual travel plans, which this circuit has held to be a contributing factor that gives rise to probable

cause. *See United States v. Zubia–Melendez,* 263 F.3d 1155, 1162 (10th Cir.2001); *see also United States v. Kopp,* 45 F.3d 1450, 1451 (10th Cir.1995) (defendant's implausible explanation that he was driving from California to North Carolina to take a dilapidated sofa to friends and his vagueness about his final destination gave rise to probable cause to search). Appellant, on the other hand, contends that, because the officer at no point identified himself as a police officer, it was *the officer's* behavior that was bizarre. Therefore, Appellant asserts that it was only natural for him to resist providing information about his travel plans and access to his car to a complete stranger. While this part of the encounter, standing alone, may not be sufficient to provide probable cause, in context it adds substantial support for the other factors relied on by the officer.

The trial court also found that "defendant's insistence on having the vehicle towed, despite the fact that he was informed it would be less expensive to have it repaired," was also a contributing factor giving rise to probable cause. Rec., Vol. I, at 36. While we do not find this statement to be completely accurate,[1] we do find that Appellant's repeated attempts to have his van towed such a long distance at the expense of $750 before even inquiring about having it fixed were suspicious and could contribute to probable cause.

The trial court also found that Appellant's persistent efforts to keep the van locked and his unusual efforts to close the van door upon the officer's movement towards the door gave rise to probable cause. Courts should "defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." *United States v. McRae,* 81 F.3d 1528, 1534 (10th Cir.1996) (quota-

tions omitted). Therefore, we hold that Appellant's strange behavior toward his minivan was sufficient to give the officer probable cause to believe that he was trying to hide contraband.

■ Appellant argues that the officer should have obtained a telephonic warrant before searching the van because he knew how to do so. This circuit has determined that, in cases involving automobiles when probable cause exists, "the agents' time and opportunity to obtain a warrant are irrelevant." *United States v. Crabb,* 952 F.2d 1245, 1246 (10th Cir.1991). Thus, in light of the fact that Officer Bushnell did indeed have probable cause, it does not matter that he could have obtained a telephonic warrant but did not do so.

For the foregoing reasons, we **AFFIRM** the district court's denial of the motion to suppress.

---

1. Once Appellant learned that the van could be fixed for a couple hundred dollars, he agreed to have it done. There is no indication he "insisted" on having it towed once he learned it would be cheaper to have it fixed. Rec., Vol. II, at 21–25.