**UNITED STATES of America,**
**Plaintiff,**

v.

**Robert HOWE, Defendant.**

**No. 1:02–CR–64–B.**

United States District Court,
D. Utah,
Northern Division.

Dec. 19, 2003.

Michael J. Boyle, Esq., Boyle & Drage, Ogden, UT, for defendant.

Veda M. Travis, Esq., U.S. Attorney's Office, for plaintiff.

## MEMORANDUM ORDER AND OPINION

BENSON, Chief Judge.

### INTRODUCTION

After being found in a red Jeep Cherokee grasping a pipe and torch-like lighter,

Defendant Robert Howe was arrested for possession of drug paraphernalia on April 24, 2002. Subsequent to that arrest, a search of the vehicle yielded, among other things, additional drug paraphernalia, guns and methamphetamine. As a result, Defendant was indicted in a three-count indictment on July 2, 2002 charging him with violating 21 U.S.C. § 841(a)(1)(A) (possession with intent to distribute fifty (50) grams or more of a Schedule II controlled substance), 18 U.S.C. § 924(c) (possession of a firearm in relation to drug trafficking), and 18 U.S.C. § 922(g)(1), (2) (possession of a firearm by a convicted felon).

## BACKGROUND/FINDINGS OF FACT

At the evidentiary hearing held January 15, 2003 Officer Adam Szerszen and Officer Adam Madsen testified to the facts surrounding the search of Defendant's car on April 24, 2002. Officer Szerszen has specialized training in narcotics interdiction and is certified with POST as a drug recognition expert and, during his five-year tenure with the Roy City Police Department, has had almost daily contact with individuals under the influence of narcotics. (Tr. at 7.)

At approximately 3:30 a.m. on April 24, 2002, Officer Szerszen, while on uniformed patrol in Roy, Utah, was doing a business check in the area of 5600 South 2050 West, where he saw a red Jeep Cherokee in the parking lot of the America First Credit Union. (*Id.* at 7–9, 26.) Officer Szerszen had never seen the vehicle parked in this area before. (*Id.* at 26.) The vehicle was backed in near the rear-exit door of the credit union. (*Id.* at 9.) Officer Szerszen first thought a burglary might be in progress. (*Id.*)

Officer Szerszen directed his spotlight at the vehicle and noticed a male occupant, who was later identified as Defendant, in the driver's seat, slumped over to the side. (*Id.* at 9, 14.) He became concerned for the Defendant, approached the vehicle and then noticed the occupant had a torch-like lighter in one hand and a glass pipe in the other. (*Id.* at 9–10.) Based on his training and experience as a police officer, Officer Szerszen believed the items were drug paraphernalia. (*Id.* at 10.)

Officer Szerszen called for back-up. (*Id.* at 11.) To satisfy their concerns regarding Defendant's safety, Officer Szerszen approached the vehicle on the driver's side and Officer Madsen, the back-up officer, approached the vehicle on the passenger side. (*Id.* at 11, 57.) Officer Szerszen tapped on the window with his flashlight but Defendant did not immediately respond. (*Id.* at 11.) Defendant eventually regained consciousness and asked Officer Szerszen who he was. (*Id.* at 11.) Officer Szerszen identified himself as a police officer and asked if he could speak with Defendant. (*Id.*) After attempting to roll down the power window manually and fumbling with the door, Defendant stumbled out of the vehicle, using the vehicle for balance, all the while grasping the glass pipe and the torch. (*Id.* at 11–12.)

Officer Szerszen thought Defendant was impaired and possibly drunk because he had poor balance, a slumping head that swayed back and forth, slow and slurred speech and difficulty standing. However, Officer Szerszen was unable to detect alcohol on Defendant's breath.[1] (*Id.* at 12–13.) After receiving no response to his request that Defendant hand over the items he was carrying, Officer Szerszen took the items and noticed that the glass pipe was warm.

---

**1.** Officer Madsen described Defendant as "impaired" and "somewhat disoriented." (Tr. at 54.)

(*Id.* at 13.) He then placed Defendant under arrest for possession of drug paraphernalia. (*Id.*) Defendant was placed in handcuffs and Officer Szerszen conducted a pat-down search. (*Id.* at 14.) Officer Szerszen walked Defendant to the police car and there conducted an additional search, which included emptying Defendant's pockets. (*Id.*)

Officer Szerszen found five vials in Defendant's front pocket, which contained a substantial amount of a white substance. (*Id.* at 14–15) Based on Officer Szerszen's experience, the white substance appeared to be methamphetamine. (*Id.* at 15.) In Defendant's back pocket Officer Szerszen found a number of small baggies which, again, based on Officer Szerszen's experience, appeared to be packaging for smaller amounts of methamphetamine. (*Id.* at 14–15.) In Szerszen's training and experience, the packaging indicated drug distribution. (*Id.* at 15.)

Officer Szerszen then advised Defendant of his *Miranda* rights and Defendant agreed to speak with him. (*Id.* at 16.) Upon being questioned as to the identity of the white substance, Defendant responded that it was crank (another word for methamphetamine). (*Id.*) Officer Szerszen placed Defendant in the back seat of the police car and, intending to impound Defendant's car, Officer Szerszen proceeded to search Defendant's vehicle. (*Id.* at 16–17.) Officer Szerszen's search was allegedly performed pursuant to Roy City Police Department written policy, which au-

thorizes officers to impound and search a vehicle in instances similar to this. (Tr. at 18.) The policy explicitly authorizes the opening of locked containers located in a vehicle subject to an inventory search. (*Id.*)

During Officer Szerszen's search of Defendant's vehicle he found: (1) a closed black container that contained two glass pipes; (2) baggies similar to those found earlier during the search of Defendant's person;[2] (3) a handgun stuffed behind a baby carrier in the back seat;[3] (4) several guns behind the back seat;[4] (5) two zippered gun carriers containing two weapons, scales, packaging materials and what appeared to be methamphetamine; and (6) a silver briefcase locked with a combination lock. (*Id.* at 17–24.) Upon finding the locked briefcase, Officer Szerszen asked Defendant for the combination. (*Id.* at 21.) Defendant refused. (*Id.*) Defendant told the officer that he (Officer Szerszen) knew what was in the briefcase and that he (Defendant) wanted to talk with a lawyer. (*Id.*) Officer Szerszen told Defendant that he did not know what was inside the briefcase, that he did not want to damage the briefcase, and that the briefcase would be opened with or without the combination. (*Id.*) Defendant did not give Officer Szerszen the combination and stated that he wanted a lawyer. (*Id.*)

Officer Szerszen pried open the latch on the briefcase with a screwdriver he found in the vehicle. (*Id.* at 22.) Inside the locked briefcase he found several large

---

**2.** The baggies contained a light residue; one baggy contained a quantity of the white substance. (Tr. at 17.) Based on Officer Szerszen's experience he believed the white substance was, similar to the substance found of Defendant's person, methamphetamine. (*Id.* at 18.)

**3.** After finding the handgun, Officer Szerszen again called for backup because Officer Mad-

sen had left to handle another call. (Tr. at 23.)

**4.** One of the guns, which was in a partially opened plastic bag, appeared to be an AK–47. (Tr. at 23.) When the AK–47 was removed, Officer Szerszen found what he believed to be a MAC 10 type pistol. (*Id.*)

packages of methamphetamine. (*Id.*) Officer Szerszen located methamphetamine throughout the vehicle. (*Id.* at 24.)

The Roy City Police Department written policy states that an inventory search is to be conducted by one officer; however, the standard procedure in Officer Szerszen's experience is that multiple officers generally participate in inventory searches of greater magnitude. (*Id.* at 33.) In addition, according to the written policy, all items found within the vehicle are to be inventoried and the inventory report is to be signed. (*Id.* at 37, 41). Officer Szerszen did not include every item found in the vehicle on his inventory report and the report was not signed due to an oversight. (*Id.* at 41, 44).

## DISCUSSION

Defendant brought the instant motion to suppress the physical evidence found by Officer Szerszen during his search of the vehicle. Defendant argues the officer's search of the vehicle violated his Fourth Amendment rights because the police officer did not follow Roy City's established policy regarding inventory searches, and that Defendant did not give consent to the police officer to search a locked briefcase found in the vehicle, thus rendering the search unreasonable. (Memo ISO Motion, p. 2–5.) In addition, Defendant argues that even if the inventory search was constitutional, breaking the lock of the briefcase was not. (*Id.* at p. 5–6.) Defendant also argues that his post-custody statements should be suppressed because he was not adequately advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). (*Id.* at p. 7–8.) The government responds by challenging Defendant's standing, outlining the justifications it believes rendered the warrantless search legal, and arguing that Defendant was adequately advised of his *Miranda* rights.

## I. Standing

■ The government originally argued Defendant lacked standing to challenge the search of the vehicle because Defendant neither owned the vehicle nor asserted an ownership interest over the items seized from the vehicle. (Memo ISO Opp., p. 8–9.) To establish standing to contest the search of an automobile "the defendant bears the burden at the suppression hearing to show a 'legitimate possessory interest in or lawful control over the vehicle.'" *United States v. Allen*, 235 F.3d 482 (10th Cir.2000) (citing *United States v. Gama–Bastidas*, 142 F.3d 1233, 1239 (10th Cir. 1998)). The Court held a supplemental hearing on November 18, 2003 regarding Defendant's standing. (Docket No. 64.) Defendant presented his uncle, James E. Howe, as a witness at the hearing. Howe testified that in October 2001 he loaned Defendant his red Jeep Cherokee on the premise that Defendant would eventually purchase the vehicle. (Tr3. at p. 6.) From the date of transfer until the date of Defendant's arrest, Howe did not use the vehicle. (*Id.*) Based on Howe's testimony the government withdrew its argument contesting Defendant's standing. (*Id.* at 14.) Accordingly, the Court does not address whether Defendant has standing to raise the instant motion to suppress.

## II. The Search of the Vehicle [5]

■ Defendant contends that Officer Szerszen violated his Fourth Amendment

---

5. Because Defendant does not raise arguments relating to the propriety of the initial stop, the Court does not address whether Officer Szerszen was justified in stopping Defendant. For the same reasons, the Court does not address whether Defendant's arrest for possession of drug paraphernalia was reasonable. However, the Court notes that, consid-

rights when he performed a search of the vehicle. Officer Szerszen did not have a search warrant when he searched Defendant's vehicle, therefore the government bears the burden of establishing the reasonableness of the search under one of the exceptions to the warrant requirement. *See Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Defendant argues the search of his vehicle was unreasonable because, when performing the inventory search, Officer Szerszen failed to follow internal Roy City Police Department written policies regarding inventory searches. (Memo ISO Motion, p. 2–4.) In addition, Defendant argues in any event that the search of the locked briefcase was unreasonable. (*Id.* at 5–6.) The government contends several grounds exist to justify Officer Szerszen's warrantless search including: (1) search incident to arrest, (2) automobile search based on probable cause, (3) lawful inventory search, and (4) inevitable discovery. (Memo ISO Opp. p. 9–10.) The Court, in determining the reasonableness of the search, will address each of these in turn.

### A. Search Incident to Arrest

 A search incident to arrest is a well-recognized exception to the warrant requirement. *Illinois v. Rodriguez,* 497 U.S. 177, 185, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). The scope of the search is limited to the arrestee's person and to any area within his or her reach. *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). If the arrestee is an occupant of a vehicle, the arresting officer may search the passenger compartment of the vehicle and the "contents of *any* containers found within the passenger compartment." *New York v. Belton,*

453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (emphasis added). Such a search is permissible even if the arrestee was secured and away from the vehicle prior to the beginning of the search. *Id.* at 456, 101 S.Ct. 2860; *United States v. Franco,* 981 F.2d 470, 472 (10th Cir.1992).

Officer Szerszen's first encounter with Defendant was finding him passed out in the front seat of a vehicle holding a pipe and a torch-like lighter. After Defendant showed signs of consciousness and exited the vehicle, Officer Szerszen, noticing Defendant appeared intoxicated, placed him under arrest for possession of drug paraphernalia.[6] Officer Szerszen, subsequent to the arrest, searched Defendant's person, placed him in the back seat of the patrol car, and proceeded to search the vehicle where Defendant was found.

During Officer Szerszen's search of the vehicle, he discovered various containers, most unlocked, but one locked. All of the containers found in the vehicle were opened. Guns, drugs and drug paraphernalia were found. According to United States Supreme Court precedent, Officer Szerszen was authorized, under the search-incident-to-arrest doctrine, to search the vehicle and *any* container found therein. See *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). This Court sees no reason to distinguish under the facts of this case between the search of locked containers and unlocked containers under the search-incident-to-arrest exception to the warrant requirement. The Court finds the search of the locked briefcase analogous to the search of a locked glove compartment, which several circuits have found permissi-

---

ering the overwhelming facts surrounding Defendant's predicament, the stop was justified and the subsequent arrest was reasonable.

**6.** The Court again notes that Defendant does not challenge the legality of the arrest.

ble. *See United States v. Woody,* 55 F.3d 1257, 1269 (7th Cir.1995) ("The search of the *locked* glove compartment was reasonable despite the fact that it occurred while [the defendant] sat handcuffed in the back seat of the patrol car and while [the police officer] held the two passengers under his control at the side of the road.") (emphasis added); *United States v. McCrady,* 774 F.2d 868, 872 (8th Cir.1985) ("We hold that the district court correctly determined that the search of the car including the *locked* glove compartment was incident to an arrest.") (emphasis added).

Officer Szerszen's search of the vehicle, including all containers found therein, was reasonable and proper as a search incident to arrest.

### B. Probable Cause (the *Carroll* Doctrine)

■ Under the *Carroll* doctrine an automobile may be searched without a warrant if police have probable cause to believe the vehicle contains contraband or other evidence. *California v. Acevedo,* 500 U.S. 565, 579–81, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). "Probable cause to search a vehicle is established if, under the 'totality of the circumstances[,]' there is a 'fair probability' that the car contains contraband or evidence." *United States v. Nielsen,* 9 F.3d 1487, 1489–90 (10th Cir. 1993). If there is probable cause to search the vehicle, the officer is permitted to "search *any* package within the vehicle that is capable of concealing the object of the search." *United States v. Edwards,* 242 F.3d 928, 939 (10th Cir.2001) (citing *Wyoming v. Houghton,* 526 U.S. 295, 307, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999)) (emphasis added). "The scope of a warrantless search of an automobile thus is

not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross,* 456 U.S. 798, 824, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

■ Officer Szerszen had probable cause to search the vehicle and all containers found therein. First, Defendant was found passed out in the vehicle. Second, while in the vehicle Defendant was holding a pipe and a torch-like lighter. Third, when Defendant regained consciousness and exited the vehicle, he appeared impaired and disoriented. Fourth, when Defendant was arrested, Officer Szerszen found five vials containing a white substance in Defendant right pocket, which based on Officer Szerszen's experience, appeared to be methamphetamine. Fifth, a number of small baggies, which based on Officer Szerszen's experience, appeared to be for drug distribution purposes, were found in Defendant's back pocket. Sixth, when Officer Szerszen asked Defendant about the white substance Defendant said it was "crank" or methamphetamine.[7] Based on the totality of these circumstances, Officer Szerszen had probable cause to believe the vehicle contained contraband or other evidence. *See Acevedo,* 500 U.S. at 579–81, 111 S.Ct. 1982. The items found on Defendant's person, as well as the circumstances of his discovery, indicated that he was distributing narcotics from the vehicle. Therefore, Officer Szerszen was authorized to conduct a warrantless search of the vehicle including every container found within the vehicle, locked or unlocked, that was capable of concealing drugs, drug paraphernalia or

---

7. The Court relies on Defendant's post-arrest statements notwithstanding Defendant's argument that they should be suppressed. As discussed below, the Court rejects Defendant's argument.

drug dealing equipment. *See Edwards,* 242 F.3d at 939 (citing *Wyoming v. Houghton,* 526 U.S. 295, 307, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999)).

Defendant, during the November 18, 2003 hearing, argued that the *Carroll* doctrine did not extend to the present case because the vehicle was to be impounded and towed away. (Tr3. at 11.) Defendant's argument is unavailing. The Tenth Circuit has held that the right to search a vehicle pursuant to the *Carroll* doctrine "does not vanish simply because the vehicle has been immobilized." *United States v. Sparks,* 291 F.3d 683, 690 (10th Cir. 2002) (citing *United States v. Vasquez–Castillo,* 258 F.3d 1207, 1212 (10th Cir. 2001)); *see also United States v. Mercado,* 307 F.3d 1226, 1229 (10th Cir.2002) (affirming a denial of a motion to suppress evidence obtained from the search of an inoperable car). The fact that Officer Szerszen immobilized the vehicle through an impound does not render the *Carroll* doctrine inapplicable.

The entire search was reasonable pursuant to the *Carroll* doctrine based on probable cause.

### C. Impound/Inventory Search

■■ An inventory search is another "well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine,* 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). An inventory search is "designed to effect three purposes: protection of the owner's property, protection of the police against claims of lost or stolen property, and protection of the police from potential danger." *United States v. Haro–Salcedo,* 107 F.3d 769, 772 (10th Cir.1997). To be reasonable, an inventory search must be conducted according to "standardized procedures" and not be a ruse for general rummaging. *Id.* at 772–73. However, an inventory search

may be justified by a legitimate inventory purpose despite an officer's subjective desire to find evidence of criminal conduct. *See Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

■ Defendant relies on *Haro–Salcedo* for the proposition that because Officer Szerszen failed to follow Roy City Police Department's written inventory search policy the search cannot be properly categorized as an inventory search. (Memo ISO Motion, p. 2–5.) The Court agrees. The policy violations of which Defendant complains are: (1) two officers, instead of one, conducted the inventory, (2) all of the items contained in the vehicle were not included on the inventory report, and (3) the inventory report was not signed. (Memo ISO Motion, p. 4–5.) In *Haro–Salcedo* the Tenth Circuit held an alleged inventory search unreasonable because of the investigative officer's failure to complete a written inventory form, as required by police procedures. 107 F.3d at 773. The court found that the officer's failure to comply with the standardized procedures regarding inventory searches evinced that labeling the roadside search as an inventory search was merely a pretext for the officer's sole purpose of discovering incriminating evidence. *Id.* This Court finds this case factually indistinguishable from *Haro–Salcedo.* Accordingly, the United States' contention that the search of Defendant's vehicle was a properly conducted inventory search is not well taken.

The officers' failure to comply with Roy City Police Department written policies regarding inventory searches renders the warrantless search unreasonable and the evidence seized inadmissible under the inventory search doctrine.

### D. Inevitable Discovery

The United States Supreme Court recognizes the inevitable discovery exception

to the warrant requirement, which prohibits suppression of evidence unlawfully obtained if it would have "ultimately or inevitably ... been discovered by lawful means." *United States v. Tueller,* 349 F.3d 1239, 1243–44 (10th Cir. 2003) (quoting *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). Those "lawful means" include a lawful inventory search. *Id.; see also Haro–Salcedo,* 107 F.3d at 773–74 (10th Cir.1997) ("This court has affirmed the inevitable discovery doctrine in the context of an illegal search which preceded lawful impoundment and inventory."); *United States v. Ibarra,* 955 F.2d 1405, 1410 (10th Cir.1992) ("[I]f evidence seized unlawfully would have been inevitably discovered in a subsequent inventory search, such evidence would be admissible.").

 Notwithstanding the Court's finding that the search of Defendant's vehicle and the containers found therein was not a valid inventory search, the Court finds that the evidence recovered during the search of the vehicle, including that found in the locked briefcase, would have been inevitably discovered. Once again the Court finds the reasoning set forth in *Haro–Salcedo* controlling. In *Haro–Salcedo,* subsequent to finding the search improperly categorized as an inventory search because of the officer's failure to follow the police department's standardized procedures regarding such, the court found that a "proper inventory search would have uncovered the cocaine in the trunk of [defendant's] vehicle." 107 F.3d at 772–74. The *Haro–Salcedo* court quotes *United States v. Horn,* 970 F.2d 728 (10th Cir. 1992), to support its holding that "[e]ven assuming arguendo that the post-arrest search beside the highway was improper and should have been conducted in a different manner, had the search been conducted in the manner defendant suggests

is proper, it was inevitable that the weapons would have been discovered." *Haro–Salcedo,* 107 F.3d at 774 (quoting *Horn,* 970 F.2d at 732). For the same reasons articulated in *Haro–Salcedo* and *Horn,* the evidence found in the vehicle would have inevitably been discovered.

This is true of the evidence found in the locked briefcase as well because Roy City Police Department written policy authorized Officer Szerszen to open locked containers. Although the Tenth Circuit recently recognized that a written policy authorizing a search of locked containers during an inventory search does not render the search *per se* reasonable, it did require defendant, in order to prevail on a motion to suppress, to make a showing that the opening of the locked briefcase constituted " 'excessive or unnecessary destruction of property.' " *See Tueller* 349 F.3d 1239, 1245–46 (10th Cir.2003) (quoting *United States v. Ramirez,* 523 U.S. 65, 71, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998)). Defendant has made no such showing. The Court finds that the evidence found is admissible pursuant to the inevitable discovery doctrine.

## III. Post-arrest Statements

 Defendant argues that his post-arrest statement should be suppressed because Officer Szerszen failed to adequately convey Defendant's rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to questioning. *Miranda* held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444, 86 S.Ct. 1602. The "procedural safeguards" of which police officers must notify defendants prior to

interrogation are known as *Miranda* warnings, which require notification of a defendant's

> right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 479, 86 S.Ct. 1602. Officers are not required to give an exact incantation of the *Miranda* warnings but must offer a fully effective equivalent. *California v. Prysock*, 453 U.S. 355, 359–60, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) (per curiam) (internal citation omitted).

 Officer Szerszen testified to the following conversation regarding his advisement of Defendant's *Miranda* rights:

> I told him he has the right to remain silent. I said anything you say can and will be used against you in a court of law. You have a right to any attorney. If you can't afford an attorney one will be provided for you. I asked him if he understood his rights. He acknowledged to me by saying that he understood.

(Tr. at p. 31.) Defendant argues that Officer Szerszen's failure to specifically inform Defendant that an attorney would be provided *prior* to questioning, if requested, rendered the *Miranda* warning ineffective. Defendant's argument is without merit. The reference to appointed counsel in the *Miranda* warnings is defective when the right is linked to a future point in time. *Prysock*, 453 U.S. at 360, 101 S.Ct. 2806. Here, Officer Szerszen's statements were in the present tense, directed at the present moment. Those statements effectively communicated to Defendant that his right

to appointed counsel existed at that time, not at some point in the future. In addition, Defendant's post-arrest conduct demonstrated that he understood that he had the immediate right to a lawyer. When asked for the combination to the locked briefcase, Defendant twice responded that he wanted a lawyer evidencing his knowledge and understanding of his *Miranda* rights. The Court finds that Officer Szerszen did not violate Defendant's rights under *Miranda*. His post-arrest statements are admissible.

## CONCLUSION

For the above-stated reasons, the Court DENIES Defendant's motion to suppress.

**IT IS SO ORDERED.**