FILED
United States Court of Appeals
Tenth Circuit

May 22, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.

LANCE CLAYTON PETERSEN,

    Defendant-Appellee.

No. 12-4139
(D.C. No. 11-CR-00116-CW-1)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **GORSUCH**, and **BACHARACH**, Circuit Judges.

After receiving a tip that someone was prowling around an unfinished apartment complex in the middle of the night, responding officers heard noises coming from inside. They spotted, too, a pickup truck parked with its bed resting against the entrance to the building, as if ready for easy loading and leaving. Given those facts and a number of recent thefts from nearby construction sites, the officers suspected something not at all good was afoot.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Soon one of the officers encountered a man wandering just outside the building. When asked, the man gave his name as "Lance Petersen," a name that matched the name of the truck's registered owner. Asked what he was up to, Mr. Petersen replied that he was out for an evening's stroll and insisted that he had never stepped foot inside the building.

This the officer did not believe. And after a little prodding, Mr. Petersen admitted that he had lied. He admitted, too, that he had been inside the building. Yet even now he professed he was merely engaging in some innocent apartment hunting. Somewhat incongruously, though, when asked why he left the building Mr. Petersen motioned toward a sign about video surveillance and said he didn't want trouble.

Officers grew even more concerned when Mr. Petersen kept putting his hands in his pockets despite repeated requests not to do so. Worried for their safety, officers handcuffed Mr. Petersen and continued their questioning. After asking for some form of identification, Mr. Petersen replied that his wallet was in the truck and gave an officer permission to retrieve it. As the officer opened the truck's door, he smelled marijuana but didn't pursue the issue just then and instead grabbed the wallet. Returning to Mr. Petersen, the officer asked about the smell and Mr. Petersen conceded that marijuana was indeed in the truck, though when later asked for permission to search the truck he refused. This didn't dissuade the officers, though, because they soon searched the truck all the same.

There they found a loaded revolver as well as marijuana — discoveries that led to Mr. Petersen's indictment in federal court for being a felon unlawfully in possession of a firearm and for possession of a controlled substance.

Mr. Petersen responded with a motion to suppress. He pursued a number of theories why the search of his truck was unlawful and the evidence found there should be excluded from any criminal proceeding. Agreeing with one of Mr. Petersen's theories, the district court granted the motion. The district court held that officers had reasonable suspicion to detain Mr. Petersen as part of an investigation into potential criminal activity. It held, too, that the handcuffing was an appropriate measure for officer safety. But it also held that what started out fine enough became unlawful as it progressed. The court was uncertain exactly when the lawful investigatory stop ended and the unlawful detention began, but it was sure that point came before the officers asked Mr. Petersen for permission to search the truck. Because Mr. Petersen should have been released and free to go before his truck was searched, the district court reasoned, the evidence found in the search was tainted and had to be suppressed.

The government now appeals. As the government sees it, by the time the officers asked Mr. Petersen for permission to search his truck reasonable suspicion had seasoned into probable cause. Probable cause to think Mr. Petersen was guilty of burglary. Given this, the government submits, Mr. Petersen was lawfully detained from the moment he was first stopped to the time he was taken

to jail. And given that, the government argues, the theory of exclusion the district court endorsed was in error.

Probable cause for an arrest is said to exist if the "facts and circumstances within [the officers' collective] knowledge and of which they [have] reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [suspect] . . . committed . . . an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). This standard "does not require proof beyond a reasonable doubt. It does not even require the suspect's guilt to be more likely true than false. Instead the relevant question is whether a substantial probability existed that the suspect committed the crime." *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (citations omitted) (internal quotation marks omitted).

By the time the officers asked to search the truck, we have no doubt a reasonably prudent person on the scene would have thought Mr. Petersen very probably guilty of burglary. In Utah, the crime of burglary does not require a spiriting away of goods but is completed when (among other things) a person (1) enters a premises unlawfully (2) with the intent to commit theft. Utah Code Ann. § 76-6-202(1). By the time the truck was searched, the officers had seen more than enough to think both of these things about Mr. Petersen. They knew that he had entered the complex in the middle of the night when it was closed for business; they knew this was unusual enough to prompt a call to police; they knew Mr. Petersen lied when first asked whether he had entered the site; they

knew that, when pressed, he offered an incredible explanation for his behavior; they knew other construction site burglaries had occurred in the area recently; they knew that Mr. Petersen's truck was backed against the building as if to allow it to be loaded; and they knew that Mr. Petersen all but admitted he was on the property unlawfully when he told the officers he left because he saw surveillance cameras in the area and didn't want trouble. These facts, viewed in aggregate, are easily enough to suggest that Mr. Petersen had no legitimate business on the construction site and had theft on his mind. *See, e.g.*, *United States v. Mercado*, 307 F.3d 1226, 1230-31 (10th Cir. 2002) ("vague" and "implausible" responses may "add[] substantial support" to probable cause determination); *Teague v. Overton*, 15 F. App'x 597, 601 (10th Cir. 2001) (presence at the crime scene, lying, and other facts can create probable cause).

The district court's contrary holding rests on two legal errors invited by Mr. Petersen.

First, the district court emphasized its understanding that the officers on the scene conceived of Mr. Petersen as a trespass suspect rather than a burglary suspect. It then proceeded to explain its belief that probable cause didn't exist to arrest Mr. Petersen for trespass under Utah law. But however all this may be, it is irrelevant. When it comes to the Fourth Amendment, the Supreme Court has instructed that "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*,

543 U.S. 146, 153 (2004).  "An arrest is not invalid under the Fourth Amendment simply because the police officer[s] subjectively intended to base the arrest on an offense for which probable cause is lacking, so long as the circumstances, viewed objectively," warrant an arrest "for *some* offense." *Morris v. Noe*, 672 F.3d 1185, 1192-93 (10th Cir. 2012) (internal quotation marks omitted).  And the facts the officers uncovered in this case were sufficient, viewed objectively, to support an arrest for the offense of burglary.  That is all the Fourth Amendment requires.

Second, the district court said there was no sign at the apartment complex "prohibiting Mr. Petersen from entering the building" and, because of this, the government "failed to show that Mr. Petersen entered the building unlawfully." But this line of reasoning conflates the crimes of burglary and trespass.  When a defendant's only offense is crossing another's land, Utah law seeks to make sure the defendant knows his presence isn't welcome.  So a person generally cannot be held criminally liable for trespass unless there is some sign, fence, or personal notice communicating that entry is unwelcome.  *See* Utah Code Ann. § 76-6-206(2)(b).  But when a defendant's offense includes not just merely traipsing across another's property but entering with an intent to abscond with his neighbor's goods, the law doesn't require such punctiliousness:  the defendant is presumed to know *that* sort of behavior isn't welcome.  Home owners, after all, shouldn't have to tack up "no trespass" signs to ensure passersby aren't at liberty to help themselves.  The Utah Supreme Court has confirmed all this, expressly

- 6 -

holding that the trespass statute's "notice element" bears no "relationship" to the state's burglary statute. *State v. Wilson*, 701 P.2d 1058, 1060 (Utah 1985). When it comes to burglary, then, the unlawful entry element doesn't require signs, it can be inferred from the facts, and ample facts in this case suggest Mr. Petersen's entry was anything but lawful.

So it is, we must reverse. The district court granted the motion to suppress based on the premise that Mr. Petersen was unlawfully detained at the time the officers searched his truck. That premise, pressed on the district court by Mr. Petersen, is in error. But in saying that much we take equal care to point out what we do not say. In his motion to suppress, Mr. Petersen raised various other theories — arguing, for example, that the search of his truck was unconstitutional even assuming the propriety of his own detention. On this and other possible theories for suppression that the district court has yet to address we say nothing. Likewise, we do not take up the speculative question whether, if a Fourth Amendment violation occurred, suppression is the appropriate remedy in this case. *See generally Davis v. United States*, 131 S. Ct. 2419, 2427 (2011). We hold only that the theory the district court relied on in its suppression order was mistaken.

Reversed and remanded.


ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge