FILED
United States Court of Appeals
Tenth Circuit

January 27, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ISRAEL TAPIA,

Defendant-Appellant.

No. 09-3060
(D.C. No. 6:08-CR-10027-MLB-1)
(D. Kan.)

---

ORDER AND JUDGMENT[*]

---

Before **MURPHY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **GORSUCH**, Circuit Judge.

---

After unsuccessfully seeking to suppress various pieces of evidence gathered against him, Israel Tapia pled guilty to possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). In his plea agreement, Mr. Tapia preserved his right to appeal the district court's suppression ruling, which he does now. Discerning no error in the district court's disposition, we affirm.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

The facts giving rise to this case are familiar to the parties and extensively recounted in the district court's opinions in the case, so we offer only a brief sketch of them here. In doing so, we present the facts, as we must, in the light most favorable to the government, as it was the prevailing party in the district court. *See United States v. McKissick*, 204 F.3d 1282, 1296 (10th Cir. 2000).

This case arose when Kansas State Trooper Lee Rose received a call from dispatch alerting him to a speeding silver car with Arizona plates traveling on Kansas Highway 54. Trooper Rose soon spotted the car in question and followed it into a gas station without activating his emergency lights. He parked a few spaces from the silver car, exited his own vehicle, and approached the silver car, which contained the defendant, a female passenger, and two children.

When Trooper Rose arrived at the driver's side window, it was about halfway down and the defendant was speaking on a cell phone. Trooper Rose asked the defendant if they could talk. According to Trooper Rose, the defendant said, "I gotta go," into his cell phone and stepped out of the car. The Trooper then asked the defendant to move away from the car, explained that he was responding to a speeding complaint, and asked to see the defendant's driver's license. The defendant replied he didn't have his license with him, and so Trooper Rose asked the defendant his name. The defendant provided the false name "Phil Tapia." During the pair's conversation, the defendant also indicated

that the silver car did not belong to him, but was instead rented by his mother, who was not traveling with him. Trooper Rose then asked for, and received, permission to retrieve the rental agreement from the car.

Trooper Rose walked back over to the silver car and retrieved the rental agreement, which confirmed that the vehicle had been rented to the defendant's mother and that no one else was authorized to drive the vehicle. After reviewing the rental documents, Trooper Rose spoke with the female passenger, Tiffany Kastner. Ms. Kastner, the defendant's girlfriend, revealed that the defendant's real name is Israel, not Phil, Tapia. When Trooper Rose returned to speak with the defendant, the defendant admitted that he had lied about his name. Trooper Rose then called dispatch and learned that Mr. Tapia's license had been revoked. On learning this, Trooper Rose placed Mr. Tapia under arrest.

While arresting Mr. Tapia, Trooper Rose conducted a routine pat-down and found a cigarette packet containing what appeared to be marijuana. Trooper Rose then searched the interior of the rental car, where he found rolling papers, multiple air fresheners, and what seemed to be marijuana residue. At that point, the Trooper read Mr. Tapia his *Miranda* rights and then resumed his search of the car. During his search of the vehicle's trunk, he found more air fresheners and several duffle bags. In one of the duffle bags he discovered several large bundles of marijuana totaling twenty-nine pounds, which he seized as evidence.

After discovering the drugs, Trooper Rose placed Ms. Kastner under arrest and transported her, Mr. Tapia, and Mr. Tapia's children to the Pratt County Sheriff's Department. He also had a tow truck transport the rental car to the Sheriff's Department. At the station, Trooper Rose had Ms. Kastner and the children sit in a waiting room and had Mr. Tapia placed in a cell. A little later, the Trooper moved Mr. Tapia to an interview room where he and Agent Dave Heim of the United States Drug Enforcement Administration could question him. Agent Heim began by reading Mr. Tapia his *Miranda* rights again, after which Mr. Tapia voluntarily waived his right to remain silent. During the interview, Mr. Tapia made several incriminating statements.

Following their interview of Mr. Tapia, Agent Heim and Trooper Rose decided to release Ms. Kastner and the children, as well as the rental car. Before releasing the rental car to Ms. Kastner's care, though, Trooper Rose conducted another search of the vehicle. During his search of the trunk, he discovered a yellow mesh bag that felt suspiciously heavy. Trooper Rose opened the bag and discovered two handguns, which he seized as evidence.

In due course, Mr. Tapia was indicted for possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1), and for possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i). Following his indictment, Mr. Tapia moved to suppress his incriminating statements and all items found in the rental car on the basis that they were obtained in violation of

his Fourth Amendment rights. The district court denied these motions to suppress, and it is that ruling Mr. Tapia now challenges on appeal.

II

Before us, Mr. Tapia argues that the district court should have suppressed the following four pieces of evidence: (a) the statements he made to Trooper Rose at the gas station before he received a *Miranda* warning, (b) the statements he made during his interview at the Pratt County Sheriff's Department, (c) the marijuana Trooper Rose found during his initial search of the rental car at the gas station, and (d) the guns Trooper Rose found during his second search of the car at the Sheriff's Department.

We discuss each of these challenges in turn. In doing so, we are obliged to "accept the district court's factual findings unless those findings are clearly erroneous [because t]he credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province" of that court. *McKissick*, 204 F.3d at 1296 (internal quotation marks omitted). At the same time, we review the district court's legal analysis *de novo*. *Id.*

A

With respect to his initial encounter with Trooper Rose, Mr. Tapia argues that it was non-consensual and amounted to an unlawful seizure supported by neither probable cause nor reasonable suspicion. Accordingly, Mr. Tapia submits, all his statements prior to his arrest and his first receipt of a *Miranda* warning

should be suppressed.  The district court rejected this argument, holding that Mr. Tapia's initial encounter with Trooper Rose was consensual in nature and thus did not constitute a Fourth Amendment seizure at all.

An encounter with law enforcement is considered consensual, and does not implicate the Fourth Amendment or necessitate a *Miranda* warning, when a reasonable person in the position of the defendant would have felt free to decline the officer's request and leave.  *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).  This court has set forth the following non-exhaustive list of circumstances that tend to distinguish consensual from non-consensual encounters:

> [1] the threatening presence of several officers; [2] the brandishing of a weapon by an officer; [3] some physical touching by an officer; [4] use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; [5] prolonged retention of a person's personal effects . . . ; [6] a request to accompany the officer to the station; [7] interaction in a nonpublic place or a small, enclosed place; [8] and absence of other members of the public.

*United States v. Hill*, 199 F.3d 1143, 1147-48 (10th Cir. 1999).

None of these hallmark traits of non-consensual encounters are present in this case.  Trooper Rose acted in a non-threatening manner throughout his initial encounter with Mr. Tapia.  He did not brandish a weapon.  He did not park his cruiser in a way that would block Mr. Tapia's exit from the gas station.  He did not order Mr. Tapia to do anything before arresting him.  And the encounter took

place in an open, public place. Given all these facts, the district court was correct that the encounter was consensual and thus did not implicate the Fourth Amendment. *See United States v. Ringold*, 335 F.3d 1168, 1171 (10th Cir. 2003) (holding that police encounter was consensual when officers followed a suspicious car into a gas station, parked about 15 feet away from the vehicle, engaged one of the drivers in a conversation, received consent to search the vehicle, and eventually found a stash of marijuana).

On appeal, Mr. Tapia attempts to avoid this conclusion primarily by pointing to the "I gotta go" comment he made as Trooper Rose approached his car. According to Mr. Tapia, his statement was directed to Trooper Rose and amounted to an explicit refusal to talk. Thus, in Mr. Tapia's view, the Trooper's continued questioning amounted to a seizure in violation of his Fourth Amendment rights, not a consensual conversation.

The primary difficulty with this argument is that the district court expressly found that Mr. Tapia made his "I gotta go" comment to the person on the other end of his cell phone call, not Trooper Rose, and Mr. Tapia offers no argument or authority to suggest that the district court's finding was clearly erroneous. The district court issued two extensive orders explaining in detail its reasons for discrediting Mr. Tapia's version of events and did so after receiving live testimony from Trooper Rose, Mr. Tapia, and Ms. Kastner, and reviewing a videotape of the encounter as many as six times. *See generally* D. Ct. Order of

Oct. 15, 2008, at 2-6; D. Ct. Order of Aug. 5, 2008, at 2 & n.3. Mr. Tapia offers us no reason to believe that the district court erred in its finding, let alone clearly so. Instead, he merely expresses his disagreement with the district court's finding and urges us to treat his version of events as true. But a court of appeals is not free, willy nilly, to adopt a party's version of the facts in the teeth of a district court's directly contrary factual findings. Before we may credit Mr. Tapia's facts, he must identify something clearly erroneous in the district court's findings. This he has not done. In these circumstances, we have no choice but to abide the district court's findings and affirm its conclusion that this encounter was consensual.[1]

B

Mr. Tapia next attacks the admissibility of incriminating statements he made at the Pratt County Sheriff's Department. These statements, he says, were made only after undue coercion by law enforcement officers and therefore should have been suppressed.

Under our precedent, a statement to law enforcement is involuntary when "the government obtained the statements by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States*

---

[1] Mr. Tapia also challenges the district court's alternative holding that, even if the comment "I gotta go" was directed to Trooper Rose, the encounter remained consensual. In light of our affirmance of the district court's primary holding, we have no need to address a dispute over its alternative holding.

*v. Erving L.*, 147 F.3d 1240, 1248-49 (10th Cir. 1998). We have identified the following factors as helpful in assessing whether a particular statement was the product of coercion or an overborne will: "(1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subjected to physical punishment." *United States v. Toles*, 297 F.3d 959, 966 (10th Cir. 2002).

Due consideration of these factors tends to undermine rather than advance Mr. Tapia's cause. Mr. Tapia does not argue that his age, intelligence, or education prevented him from understanding and waiving his *Miranda* rights, which he twice had read to him. Neither does he argue that the length of his detention or questioning coerced him into providing the statements. And Mr. Tapia alleges no physical threats.

Mr. Tapia does, however, suggest that his will was overborne by means of psychological coercion. He submits that Agent Heim and Trooper Rose threatened to place his children in the custody of Kansas's social services department if he did not speak with them. It is only after this threat, he says, that he provided his incriminating statements.

Even assuming without deciding that such a threat would suffice to render his statements involuntary, the district court expressly discredited Mr. Tapia's version of events, and again Mr. Tapia identifies for us no clear error in that

conclusion. Among other things, the district court based its credibility determination on: Agent Heim's testimony that he explained to Mr. Tapia that the state would place the children in protective custody *only if* both he and Ms. Kastner were charged and convicted; Agent Heim's testimony that this conversation about child custody occurred *after* Mr. Tapia made his incriminating statements; Mr. Tapia's demeanor while testifying; and Mr. Tapia's testimony that Agent Heim threatened to "call CPS" when the child protection agency in Kansas is the Department of Social and Rehabilitative Services, known as "SRS." D. Ct. Order of Aug. 5, 2008, at 12. Before us, Mr. Tapia does not address the district court's findings, let alone tell us why we should reject them as clearly erroneous. Instead, he simply recounts his version of the events and asks us to assume it to be true. That a court of appeals is not at liberty to do.[2]

## C

Mr. Tapia seeks suppression of the twenty-nine pounds of marijuana Trooper Rose found inside Mr. Tapia's duffle bag because, according to Mr. Tapia, insufficient evidence existed to provide Trooper Rose with probable cause to conduct this search.

Before reaching the merits of Mr. Tapia's argument, one might well question whether Mr. Tapia has standing under the Fourth Amendment to contest

---

[2] In light of our holding on this score, we need not reach the district court's alternative holding that Mr. Tapia's statements still would have been voluntary even if they came after a threat to place his children in state custody.

the search, given that the car was rented by someone else, Mr. Tapia was not authorized to drive the vehicle, and there was no authorized driver present. *See United States v. Worthon*, 520 F.3d 1173, 1183 (10th Cir. 2008) (holding that an unauthorized driver of rental car "lacks standing to challenge the search" under the Fourth Amendment when "there was no authorized driver present"). Still, the government has not pursued this point on appeal, except in a supplemental filing, and ample other grounds exist to support the search.

Among other things, Trooper Rose undoubtedly had probable cause to search Mr. Tapia's bag. By the time Trooper Rose conducted the challenged search, he had already discovered contraband on Mr. Tapia's person. He had also seen rolling papers, multiple air fresheners, and what seemed to be marijuana residue in the passenger compartment of the vehicle. Under our controlling precedents, these facts are more than enough for probable cause to suspect the car contained contraband. *See, e.g.*, *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir. 1995) (holding that discovery of marijuana during pat-down and scent of burnt marijuana in passenger compartment provided probable cause to search vehicle). And once probable cause existed to search the vehicle, "it justifie[d] the search of every part of the vehicle and its contents that may conceal the object of the search," including the duffle bags. *United States v. Ross*, 456 U.S. 798, 825 (1982); s*ee also United States v. Bradford*, 423 F.3d 1149, 1160 (10th Cir. 2005) ("Once probable cause to search is established, the officer may search the entire

vehicle, including the trunk and all containers therein that might contain contraband.").

D

Finally, Mr. Tapia argues that the guns found in his yellow mesh bag during Trooper Rose's search of the car at the Sheriff's Department should be suppressed because Trooper Rose lacked probable cause to conduct this second search. Specifically, he submits that any probable cause Trooper Rose had to search the car at the roadside dissipated by the time the car arrived at the station.

As with his challenge to the first search, one might again question whether Mr. Tapia has standing under the Fourth Amendment to challenge this search. *See Worthon*, 520 F.3d at 1183. But, even if we were to assume he did, Mr. Tapia's argument fails on its merits. The Supreme Court has repeatedly held that "police officers with probable cause to search an automobile at the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant." *Texas v. White*, 423 U.S. 67, 68 (1975) (per curiam). This is because "the justification to conduct such a warrantless search does not vanish once the car has been immobilized." *Michigan v. Thomas*, 458 U.S. 259, 261 (1982) (per curiam); *see also Chambers v. Maroney*, 399 U.S. 42, 52 (1970) (holding that "the probable-cause factor" present at the scene "still obtained at the station house"); *Ross*, 456 U.S. at 825 (holding that the same probable cause justified separate roadside and station house searches of a vehicle's trunk); *United*

*States v. Johns*, 469 U.S. 478, 485 (1985) ("*Ross* did not distinguish between the search of the paper bag [in a vehicle] that occurred at the scene of arrest and the later search of the leather pouch . . . [and] did not suggest that [its] conclusion was affected by the fact that the leather pouch was not searched until after the police had impounded the vehicle."). Mr. Tapia suggests no convincing way for us to avoid the application of this long line of precedent to his case.[3]

* * *

The district court's denial of Mr. Tapia's motions to suppress is

*Affirmed.*

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge

---

[3] Given our holding, we need not reach the district court's alternative rationale that the search was independently justified as an inventory search.