FILED
United States Court of Appeals
Tenth Circuit

August 30, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　Plaintiff-Appellee,

v.

ABEL MEDINA-GONZALEZ,

　　Defendant-Appellant.

No. 10-8097
(D.C. No. 2:10-CR-00127-NDF-1)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **EBEL** and **GORSUCH**, Circuit Judges.

---

In this direct criminal appeal, Defendant-Appellant Abel Medina-Gonzalez

challenges the district court's refusal to suppress illicit drugs discovered in his car.

Having jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

**BACKGROUND**

On March 21, 2010, Officer Richard Hillhouse stopped to assist Medina-Gonzalez

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). This order and judgment
is not binding precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed.
R. App. P. 32.1 and 10th Cir. R. 32.1.

with his disabled Dodge Caravan on a highway in Wyoming. Medina-Gonzalez, in broken English, informed Officer Hillhouse that he was traveling from Los Angeles, California, to St. Paul, Iowa. Medina-Gonzalez also explained that he was waiting for a man and a woman, who were passengers in his car, to return with motor oil for the vehicle.

Officer Hillhouse noticed one duffel bag and one smaller bag in the vehicle, and so he asked if he could see the contents of the vehicle and the bags. Medina-Gonzalez agreed and opened the doors of the vehicle. Medina-Gonzalez also showed Officer Hillhouse the contents of the bags: each bag contained approximately one days' worth of clothes and one of the bags contained syringes and an insulin bottle with Medina-Gonzalez's name on it.

Officer Hillhouse then left in search of the two passengers who had gone into town for motor oil, but he failed to locate the individuals. So Officer Hillhouse returned to the vehicle where he found that the two passengers had joined Medina-Gonzalez. The passengers identified themselves as Edith Cabrera and Oscar Cervantes-Lopez.

Medina-Gonzalez used Cabrera as a translator to show title to the vehicle to Officer Hillhouse and to explain that he purchased the vehicle six days earlier for $2,800 cash. Officer Hillhouse reviewed the title and noted that it did not include Medina-Gonzalez's name but had been signed over by the previous owner.

Officer Hillhouse then began questioning Cabrera about the trip. Cabrera explained that she, Medina-Gonzalez, and Cervantes-Lopez were traveling from Los

Angeles to Minnesota for seven days to visit Medina-Gonzalez's friends and family. Cabrera began this conversation calmly but when Officer Hillhouse explained that he thought it was odd that there was very little clothing for a seven-day trip, Cabrera became upset. Officer Hillhouse asked Cabrera if there was anything in the vehicle that could get them in trouble, to which Cabrera responded that Medina-Gonzalez had made comments about transporting something to where they were going. Cabrera also stated that Medina-Gonzalez was paying them to ride along. Cabrera and Cervantes-Lopez both attempted to get Medina-Gonzalez to admit to what he had commented about earlier in the trip, but Medina-Gonzalez insisted that he did not possess anything illegal.

Officer Hillhouse, using Cabrera as a translator, asked Medina-Gonzalez if he wanted a tow truck, and Medina-Gonzalez responded that he did. Officer Hillhouse also asked Medina-Gonzalez if he would agree to a search of the vehicle, and Medina-Gonzalez gave verbal consent. So Officer Hillhouse contacted dispatch to get a tow truck and requested additional law enforcement assistance. A tow truck and an additional officer arrived at the scene shortly thereafter.

At this point, Officer Hillhouse performed the first of four searches on the vehicle. While Officer Hillhouse did not find anything illegal in the interior of the vehicle, he noticed that the interior panels looked like they had been previously removed a number of times. Officer Hillhouse also found a screwdriver and several screws in a pullout drawer under the front passenger seat. After this first unsuccessful search, the tow truck transported the vehicle and its occupants into a nearby town.

3

While in his patrol car on the way to town, Officer Hillhouse's supervisor instructed him to go back to Medina-Gonzalez to receive written consent to search the vehicle again. So Officer Hillhouse approached Medina-Gonzalez outside of a motel and again asked Medina-Gonzalez for consent to search the vehicle. Medina-Gonzalez again consented but this time signed a written waiver to that effect.

Based on Medina-Gonzalez's written consent, Officer Hillhouse went to the towing facility and searched the vehicle a second time. During this search, Officer Hillhouse noted that Medina-Gonzalez left his duffel bag in the vehicle with his insulin and clothes. And Officer Hillhouse also noticed again that the interior panels looked like they had been previously removed a number of times and had thus suffered wear and tear. Further, several of the screws on the interior panels were mismatched. Still, Officer Hillhouse did not find anything illegal during this second search.

After the second unsuccessful search, Officer Hillhouse, who was a certified narcotics canine handler, went to Cheyenne to retrieve his narcotics canine, Czar. Officer Hillhouse returned to the towing facility and deployed Czar around the vehicle. Czar alerted to the exterior driver's side front corner of the vehicle. Based on Czar's alert, Officer Hillhouse searched the vehicle a third time but again did not find anything illegal.

Officer Hillhouse and his fellow officer, Yemoans, went back to the motel where Medina-Gonzalez had been earlier. Upon the officers' arrival at the motel, Cabrera and Cervantes-Lopez told the officers that Medina-Gonzalez walked away from the motel wrapped in a blanket about five minutes after signing consent to search the vehicle. The

4

officers then left the motel in search of Medina-Gonzalez but failed to locate him. The officers, therefore, issued an attempt to locate and returned to the police department.

The officers returned to the towing facility, Czar again alerted to the front driver's side door and the front and driver's side undercarriage of the vehicle, and so the officers performed a fourth and final search. During this search, one of the officers noticed that the spare tire looked cleaner, as if it had been handled recently. When the officers hit the tire wall, they heard something moving inside the tire. One of the officers also noticed that the tire iron used to lower the tire had scratches, but the tire jack looked like it had never been used. Thus, the officers lowered the tire to inspect it further. When the tire rolled on the cement floor, there were several audible thuds, indicating that there were objects inside the tire. The officers deflated the spare tire, cut it open, and found packages that tested presumptively positive for methamphetamine.

In the meantime, dispatch had received a call about a suspicious person wearing a blanket at a truck stop. So the officers responded to the truck stop, found Medina-Gonzalez, and placed him under arrest.

On May 20, 2010, a grand jury indicted Medina-Gonzalez with conspiracy to possess with intent to distribute 50 grams or more of methamphetamine and possession with intent to distribute 50 grams or more of methamphetamine. Medina-Gonzalez filed a motion to suppress, arguing that the search that resulted in the seizure of the methamphetamine violated the Fourth Amendment because it was without consent, without probable cause, and without a warrant. The district court denied Medina-

Gonzalez's motion to suppress, and a jury eventually convicted him of both charges. The district court sentenced Medina-Gonzalez to 168 months' imprisonment on each count, to be served concurrently, and Medina-Gonzalez timely appealed.

**ANALYSIS**

When reviewing the denial of a motion to suppress evidence, "we review the court's factual findings for clear error and view the evidence in the light most favorable to the government. We review de novo the reasonableness of a search or seizure under the Fourth Amendment." United States v. Worthon, 520 F.3d 1173, 1178 (10th Cir. 2008) (internal quotation marks omitted). "The credibility of witnesses, the weight accorded to evidence, and the reasonable inferences drawn therefrom fall within the province of the district court." Id.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. While warrantless searches are typically per se unreasonable under the Fourth Amendment, Katz v. United States, 389 U.S. 347, 357 (1967), "[a] warrantless search of an automobile is reasonable if there is probable cause to believe it contains contraband," United States v. Ludwig, 10 F.3d 1523, 1528 (10th Cir. 1993). "The rationale for the automobile exception is based on both the inherent mobility of cars (as it is often impracticable to obtain a warrant before a car can be relocated) and the fact that there is a reduced expectation of privacy with motor vehicles." United States v. Mercado, 307 F.3d 1226, 1228 (10th Cir. 2002).

6

Medina-Gonzalez first argues that the automobile exception does not apply in this case because the vehicle was not readily mobile. That argument is foreclosed by this Court's precedent. See id. at 1227–29 (concluding that the automobile exception applies to temporarily immobile vehicles when the immobility is caused by mechanical problems); see also Michigan v. Thomas, 458 U.S. 259, 261 (1982) ("[T]he justification to conduct a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant."). Thus, the district court correctly concluded that the automobile exception applied in this case and continued to determine whether probable cause existed.

The alert of a certified narcotics canine "creates general probable cause to search a vehicle." United States v. Rosborough, 366 F.3d 1145, 1153 (10th Cir. 2004); see also United States v. Kitchell, Nos. 09-6176, 09-6206, 2011 WL 3452082, at *12 (10th Cir. Aug. 9, 2011) ("[It is a] well-established principle that a positive alert from a reliable narcotics-detection dog gives rise to probable cause to search a vehicle."). "Once probable cause to search is established, the officer may search the entire vehicle, including the trunk and all containers therein that might contain contraband." United States v. Parker, 72 F.3d 1444, 1450 (10th Cir. 1995).

In this case, Czar alerted to the vehicle before the officers performed the challenged third and fourth searches. Czar's alert created the necessary probable cause

for the searches. That probable cause was further bolstered by the other factors that the district court highlighted: (1) Cabrera's nervousness and her subsequent nervous statement that there was something in the vehicle; (2) Cabrera and Cervantes-Lopez's insistence that Medina-Gonzalez admit what was being transported in the vehicle; (3) The screwdriver and screws underneath the seat coupled with the appearance of tool marks on the interior panels; (4) The small amount of luggage and clothing for three people going on a seven-day trip; (5) Medina-Gonzalez's promise to pay Cabrera and Cervantes-Lopez to travel with him; (6) The recent cash purchase of the vehicle and the incomplete title; (7) Medina-Gonzalez's failure to get his luggage and insulin from the vehicle; and (8) The officers' observation that the spare tire looked different than the undercarriage of the vehicle, as though it had been handled recently. For all of these reasons, we conclude that probable cause existed to search the vehicle. Thus, the district court did not err by denying Medina-Gonzalez's motion to suppress.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Medina-Gonzalez's motion to suppress.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge