**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 5, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DREW SAMUEL BATES,

Defendant-Appellant.

No. 11-7042
(D.C. No. 6:10-CR-00003-RAW-2)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN** and **McKAY**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

---

Drew Samuel Bates appeals from a possession with intent to distribute cocaine base conviction. He argues that (1) the district court erred in denying his motion to suppress; (2) there was insufficient evidence to convict him; and (3) his trial counsel was ineffective. We affirm.[1]

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Our jurisdiction derives from 28 U.S.C. § 1291.

BACKGROUND

On the morning of December 10, 2009, Oklahoma Highway Patrol Trooper Vern Roland stopped a car driven by Rodney Ledell Carter after observing the vehicle change lanes without signaling. As Roland walked up to the vehicle, he smelled "an overwhelming odor of green or raw marijuana." R., Vol. II at 35. Neither Carter nor his passenger, Bates, could produce a driver's license.

Trooper Alan Murray, who had also witnessed the car change lanes without signaling, arrived on the scene with his drug sniffing dog, Duffy. Murray also detected the odor of marijuana emanating from the car and Duffy alerted to the presence of narcotics. After placing Carter and Bates in the back seat of Roland's vehicle the troopers searched the vehicle. Behind the passenger seat of Carter's vehicle the troopers found a black duffle bag containing scented drier sheets and a box of laundry detergent that appeared to have been opened and resealed. Inside the box they found Ziploc bags filled with over three kilograms of a substance that field-tested positive for cocaine. They also found "loose-laying marijuana" and "a marijuana cigar blunt" in the vehicle. *Id.* at 58.

As the search progressed the patrol car's dashboard camera recorded it and also recorded the conversation between Carter and Bates, who were in the back seat of the patrol car. As the troopers were closing in on the hidden cocaine, Carter and Bates discussed the search:

| | |
|---|---|
| [Carter]: | Drew [Bates] just chill. |
| [Bates]: | Oh I am, you know. |
| [Bates]: | Probably smell it. |
| [Carter]: | That's why I told you to get that cologne. |
| [Bates]: | Umm hmm. I thought we was going to stop off at the store cause I had to pee. |
| [Carter]: | Damn he, I sure hope he don't . . . [PAUSE]. It must be time to pray. |
| [Bates]: | [MOAN] |
| | . . . |
| [Carter]: | Looks like [unintelligible] go down, shit. |
| [Bates]: | Did he open it up? |
| [Carter]: | He ain't opened it, but he, he got it out. [PAUSE]. He opening it Drew. |
| [Bates]: | Damn. |
| [Carter]: | That's it fool. |

Addendum of Exs., Ex. 9 at 10 (capitalizations in original).

The troopers arrested Carter and Bates, and had the vehicle towed from the scene. Inside Bates's pocket, the troopers found $1,190 in cash.

Carter and Bates were indicted on a charge of possessing with intent to distribute fifty grams or more of crack cocaine. Both unsuccessfully moved to suppress the evidence recovered from the traffic stop. Ultimately, Carter pleaded guilty; Bates went to trial.

At the suppression hearing and trial Roland and Murray testified regarding the traffic stop. Agent Brian Epps of the Drug Enforcement Administration testified to having examined the vehicle shortly after it was towed away. He could smell the odor of marijuana both outside and inside the car. Additionally, at trial, he recounted statements made by Bates during an interview on the day he

-3-

was arrested. According to Agent Epps, Bates stated Carter "was like a brother to him," and he had taken several trips with Carter from Dallas to Tulsa. R., Vol. II at 294. Bates explained Carter had called him on December 9 to invite him on another trip to Tulsa. Bates"knew what Carter was involved in." *Id*. at 295. Bates also told Agent Epps that his (Bates's) fingerprints might be on the detergent box and the duffel bag was his.

Carter testified for the prosecution. He stated the black bag in which the cocaine was ultimately located belonged to Bates, Bates put it in the car, and he "guess[ed] [Bates] put [the detergent box] in [the bag]," *id.* at 267, but someone else put the cocaine in the box. According to Carter, the purpose of every trip they made to Tulsa was to deliver narcotics. While there, they would stay in a hotel for several days and gamble, and he would use Bates' I.D. to cash his winnings. Further, he stated Bates knew what he (Carter) was doing, Bates "wanted to be there," *id.* at 273, and had on at least one occasion accompanied him to the delivery point.

Bates testified in his defense, stating he had accompanied Carter on four trips from Dallas to Tulsa for fun and gambling. Because Carter lacked an I.D., Bates would rent the hotel rooms, collect Carter's gambling winnings, and pay the taxes on them. He denied attending any deliveries with Carter, but "had [his] suspicions" about what Carter was doing given that he owned several houses and numerous cars despite never working. *Id.* at 328. Bates further stated he moved a

box of detergent while preparing breakfast before leaving with Carter, but it was a different brand than the one found in Carter's car. Bates denied owning the black duffel bag that contained the resealed detergent box, and stated he did not know drugs were in the car.

The jury convicted. Shortly thereafter Bates filed a pro se "Motion for Mistrial & Motion for Ineffective Assistance of Counsel & Motion to Dismiss." R., Vol. I at 145. The district court referred the ineffective-assistance issue to a magistrate judge and denied the remaining motions. After conducting an evidentiary hearing, where Bates was represented by new counsel, the magistrate recommended that the motion be denied. Bates did not object. The district judge accepted the recommendation and sentenced Bates to 190 months' imprisonment.

## DISCUSSION

### I. Motion to Suppress

"In reviewing the district court's denial of a motion to suppress, we review the court's factual findings for clear error and view the evidence in the light most favorable to the government." *United States v. Worthon*, 520 F.3d 1173, 1178 (10th Cir. 2008). We review de novo the reasonableness of a search or a seizure under the Fourth Amendment. *Id.* "The credibility of witnesses, the weight accorded to evidence, and the reasonable inferences drawn therefrom fall within the province of the district court." *Id.*

Bates contends there are "serious questions of credibility as to [] Roland's reason for the [traffic] stop." Aplt. Br. at 14. There is no video of the traffic violation and Roland's testimony varied concerning the length of time his dashboard camera was operating.

"Whether a traffic stop is valid under the Fourth Amendment turns on whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004) (quotation omitted). Both Roland and Murray testified to having witnessed Carter's vehicle change lanes without signaling, a traffic offense. As Bates does not challenge Murray's testimony we conclude the initial stop of Carter's vehicle was legitimate.

Bates next claims the stop was not reasonably related in duration and scope to the circumstances that justified the stop. He complains that instead of writing Carter a ticket for the unsignaled lane change, "Roland had [] Murray come to the scene for the purpose of having [Duffy] sniff the vehicle." Aplt. Br. at 15. Thus, Bates frames the issue as "whether the intention of [] Roland was to give a warning ticket or to search the vehicle for drugs." *Id.* at 15-16.

The argument fails for two reasons. First, an officer's subjective motives for the stop are irrelevant; "[w]e look only at whether the stop was objectively justified," *United States v. Kitchell*, 653 F.3d 1206, 1216 (10th Cir. 2011)

(quotation omitted), and here it was. Second, a "traffic stop may be expanded beyond its original purpose if during the initial stop the detaining officer acquires reasonable suspicion of criminal activity, that is to say the officer must acquire a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 1217-18 (quotation omitted). Here, neither Carter nor Bates could legally operate the vehicle, as they both lacked a driver's license. Moreover, Roland detected the odor of marijuana when he approached the vehicle—an observation confirmed by Murray, and later, Epps. There was reasonable suspicion for the continued detention of Carter and Bates.

Finally, Bates "question[s] whether the smell of marijuana constitutes probable cause to search the subject vehicle." Aplt. Br. at 16. We have clearly stated it does. *See United States v. Johnson*, 630 F.3d 970, 974 (10th Cir. 2010). Additionally, Duffy alerted to the presence of narcotics. A positive alert by a certified drug dog generally provides probable cause for officers to search a vehicle. *See United States v. Parada*, 577 F.3d 1275, 1282 (10th Cir. 2009).

The district court properly denied Bates's motion to suppress.

## II. Sufficiency of the Evidence

Bates claims there was no evidence he "knew what was in the soap box" or did anything "to make the venture succeed." Aplt. Br. at 19. We review sufficiency-of-the-evidence claims de novo, "ask[ing] whether a reasonable jury could find a defendant guilty beyond a reasonable doubt, viewing the evidence in

-7-

the light most favorable to the government and drawing reasonable inferences therefrom." *United States v. Vigil*, 523 F.3d 1258, 1262 (10th Cir. 2008). "However, we do not weigh conflicting evidence or consider witness credibility, and the fact that prosecution and defense witnesses presented conflicting or differing accounts at trial does not necessarily render the evidence insufficient." *United States v. Cooper*, 654 F.3d 1104, 1115 (10th Cir. 2011) (citation omitted).

To prove possession with intent to distribute under 21 U.S.C. § 841(a), the government must prove the defendant "(1) possessed a controlled substance, (2) knew he possessed a controlled substance, and (3) intended to distribute the controlled substance." *United States v. Burkley*, 513 F.3d 1183, 1189 (10th Cir. 2008) (quotation omitted).

Both Carter and Epps attributed ownership of the duffel bag containing the box of cocaine to Bates. According to Carter, Bates put the bag in the car and he (Carter) "guess[ed]" it was Bates who put the detergent box in the bag. R., Vol. II at 267. This latter point was supported by Epps, who related Bates's statement that his fingerprints might be on the box. And the bag and cocaine were found behind Bates's seat. The evidence was sufficient to prove Bates's possession of the cocaine.

Regarding Bates's knowledge of the cocaine, the audio captured by Roland's dashboard camera clearly demonstrates Bates's knowledge of the contents of the box. He is heard discussing with Carter his role concealing the

narcotics' smell, asking Carter whether the troopers opened the box, and then cursing when told they had found the contraband.

Finally, Bates's intent to distribute is demonstrated by the large quantity of cocaine (over three kilograms), the use of scented sheets in the duffel bag to mask the odor, and the presence of $1,190 in cash found in his pocket when he was arrested. *See United States v. Allen*, 235 F.3d 482, 492 (10th Cir. 2000) ("Facts that can go toward proving that a defendant possessed drugs with the intent to distribute include: (1) the amount of the drugs; (2) the way they are packaged; (3) the presence of cash; and (4) the presence of firearms."). Further, Bates admitted to Epps that he (Bates) "knew what Carter was involved in," R, Vol. II at 295, and had accompanied him in the past from Dallas to Tulsa. In addition, Carter testified he was, indeed, trafficking cocaine, the only purpose of the trips was trafficking, and Bates had even accompanied him on one occasion to the delivery point.

The evidence against Bates was strong. It was clearly sufficient to convict him of possessing cocaine with intent to distribute.

### III. Ineffective Assistance of Counsel

Generally, ineffective assistance claims must be brought on collateral review "so that a factual record enabling effective appellate review may be developed in the district court." *United States v. Hamilton*, 510 F.3d 1209, 1213 (10th Cir. 2007). But when the claims are sufficiently developed at the district

court level, direct appellate review is appropriate. *Id.* Here, the claims were adequately addressed below: the magistrate judge held an evidentiary hearing and issued a detailed report and recommendation (R&R), which was adopted by the district judge.

Bates was notified that failure to object to the R&R would preclude appellate review. He did not object. Under the firm waiver rule, "[t]he failure to timely object to a magistrate's recommendations waives appellate review of both factual and legal questions." *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quotation omitted). Although the rule "may be suspended when the interests of justice warrant, or when the aggrieved party makes the onerous showing required to demonstrate plain error," *Wardell v. Duncan*, 470 F.3d 954, 958 (10th Cir. 2006) (quotation and citation omitted), neither exception applies here.

AFFIRMED.

Entered for the Court

Terrence L. O'Brien
Circuit Judge